UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-80393-CIV-MARRA

ASSOCIATED INDUSTRIES INSURANCE
COMPANY, INC.,

       Plaintiff,

vs.

ADVANCED MANAGEMENT SERVICES,
INC., a foreign corporation; ADVANCED
MANAGEMENT SERVICES II, INC., a
foreign corporation; ADVANCED
MANAGEMENT PAYROLL SERVICES, INC.,
a foreign corporation; WALTER SHEAHAN,
JR., an individual; and ROBERT SCHWARTZ,
an individual,

       Defendants.

_____/

## OPINION AND ORDER

THIS MATTER is before the Court upon the Motion of Defendants Walter

Sheahan, Jr. & Robert Schwartz to Dismiss Plaintiff's Third Amended Complaint for

Failure to State a Cause of Action [DE 96].  The Court has carefully considered the

motion, response, reply, entire Court file, and is otherwise fully advised in the

premises.

### Introduction

Plaintiff Associated Industries Insurance Company, Inc. ("Plaintiff" or "AIIC")

brings its 105-page, 646-paragraph Third Amended Complaint ("Complaint" or

"Compl.") [DE 72] against Defendants Walter Sheahan, Jr. ("Sheahan"), Robert

Schwartz ("Schwartz") (together, "Individual Defendants") and others for unpaid premiums with respect to workers' compensation insurance policies and for indemnification with respect to unidentified claimants who received workers' compensation benefits under the policies, but who allegedly were not entitled to receive such benefits.  Plaintiff alleges Sheahan is the sole owner, officer and director of Defendants Advanced Management Services, Inc. ("AMS"), Advanced Management Services, II, Inc. ("AMS II") and Advanced Management Payroll Services, Inc. ("AMPS") (together, the "AMS Entities").  Compl. ¶ 24.  It is alleged that AMS, AMS II, Schwartz and/or another defendant represented to Plaintiff that AMS and AMS II operated as a property management group that managed and provided maintenance services for 17 locations around the state of Florida.  Compl. ¶¶ 149-150, 155. Plaintiff also alleges Schwartz is an officer, agent and/or representative of the AMS Entities.  Compl. ¶ 26.  Plaintiff alleges these two Individual Defendants, in their corporate capacities, made intentional material misrepresentations and/or intentional material omissions in procuring Florida workers' compensation insurance policies from Plaintiff.  It is alleged that Schwartz, in his apparent role as an officer of AMS and AMS II, directed, managed, and/or supervised operations of the AMS Entities through the offices located at 250 South Australian Avenue and 1801 South Australian Avenue, West Palm Beach, Florida.  Compl. ¶ 29.

Plaintiff alleges that it issued the first policy for AMS and AMS II, effective in 2005 and, thereafter, renewed or otherwise provided workers' compensation

insurance policies for one-year policy periods for AMS and AMS II, until November

2009.  Compl. ¶ 114.  In November 2009, it is alleged that after Plaintiff placed the

AMS and AMS II account in renewal, Plaintiff received another application for AMS

alone to obtain a Florida workers' compensation insurance policy, in which AMS's

operation was described for the first time as a staffing business, not as a property

management and maintenance business.  Compl. ¶ 115.  As Plaintiff inquired further

and reviewed the nature of AMS's "staffing" operation to determine how best to

proceed, Plaintiff was notified in March 2010 that the name of AMS was changed to

AMPS, effective January 1, 2010, and that the name on the AMS policy should change

to AMPS.  Compl. ¶¶ 116, 205.

Plaintiff began discovering information that created significant concern for

Plaintiff as to its current and potential exposure, in part because Plaintiff was unsure

of the true nature of the business operations being insured and of the true number of

client companies, locations, direct employees and statutory employees that might be

covered under the policy.  Compl. ¶ 118.  Plaintiff attempted to audit the AMS

Entities, but on or about January 22, 2010, the designated audit contact, Defendant

Abbate, refused to cooperate.  Compl. ¶ 218.  Based upon assurances that all

requested and required records for the AMS Entities would be made available and

produced for the audit, Plaintiff again attempted to conduct an audit during 2010.

Compl. ¶ 225.  Due to a breakdown in communication and cooperation, Plaintiff

eventually provided notice that the policy for AMS and AMPS would be cancelled

effective June 2010.  Compl. ¶ 119.

Now Plaintiff sues Sheahan and Schwartz for breach of contract (Count IV),[1] statutory indemnification (Counts V-VII), fraud in the inducement (Counts VIII & IX), conspiracy to commit fraud in the inducement (Count X), substantive violation of the federal Racketeer Corrupt Organizations Act ("RICO") (Count XI), conspiracy to violate RICO (Count XII), negligent misrepresentation (Count XIII) and unjust enrichment (Count XIV).

The Individual Defendants move to dismiss Counts VIII-IX (fraud in the inducement), XI-XII (RICO, and conspiracy to violate Rico) and XIV (unjust enrichment) of the Complaint for failure to state a cause of action pursuant to Fed. R. Civ. P. 12(b)(6) and urge the Court to decline exercising supplemental jurisdiction over Counts IV-VII, X and XIII.  Individual Defendants specifically attack the substantive RICO claims arguing they fail to allege either open or closed-ended continuity or a cognizable RICO "enterprise."  Individual Defendants also argue that Plaintiff's attempt to use circumstantial evidence to evade the specificity requirement fails due to legal insufficiency of such allegations.  Alternatively, Individual Defendants argue "the Court should dismiss Plaintiff's claims for fraudulent inducement and unjust enrichment for similarly failing to allege conduct which plausibly supports liability against the Individual Defendants under these various

---

[1]  AIIC brings Counts IV & V only against Sheahan.

alternative theories."  DE 96 at 3.

## Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff is required to provide factual allegations that raise a right of relief above the speculative level.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("*Twombly*").  To resolve a motion to dismiss, the district court "may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009)("*Iqbal*").  Then, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id*.

> Because Plaintiff['s] section 1962(c) claim is based on an alleged pattern of racketeering consisting entirely of the predicate acts of mail and wire fraud, their substantive RICO allegations must comply not only with the plausibility criteria articulated in *Twombly* and *Iqbal* but also with Fed. R. Civ. P. 9(b)'s heightened pleading standard, which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See also Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) (holding that civil RICO claims, which are "essentially a certain breed of fraud claims, must be pled with an increased level of specificity" under Rule 9(b)).  We have held that pursuant to Rule 9(b), a plaintiff must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud."  *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997) (applying the requirements to a RICO fraud complaint). The plaintiff must allege facts with respect to each defendant's participation in the fraud.  *Id*. at 1381.

*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).  Notably, the

"[f]ailure to satisfy Rule 9(b) is a ground for dismissal of a complaint." *FindWhat Investor Grp. v. FindWhat.com,* 658 F.3d 1282, 1296 (11th Cir. 2011) quoting *Corsello v. Lincare, Inc.,* 428 F.3d 1008, 1012 (11th Cir. 2005) (per curiam).

## Discussion

The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.,* makes it "unlawful for any person employed by or associated with any enterprise ... to conduct or participate ... in the conduct of such enterprise's affairs" through the commission of two or more statutorily defined crimes — which RICO calls "a pattern of racketeering activity." 18 U.S.C. § 1962(c).  To state a RICO claim under section 1962(c),[2] a plaintiff must allege each of the four elements required by the statute: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985). Additionally, the plaintiff must prove injury to its business or property and must show that the defendants' substantive RICO violations caused its injuries.  *Williams v. Mohawk Indus., Inc.,* 465 F.3d 1277, 1282–83 (11th Cir. 2006) (citing 18 U.S.C. § 1964(c)).  Defendants argue Plaintiff's substantive RICO claim fails as a matter of law because it fails to allege a RICO enterprise and fails to allege a pattern of

_____

[2]  RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

racketeering activity.

Existence of a RICO "Enterprise "

Defendants assert that Plaintiff has not sufficiently alleged a RICO "enterprise" because (1) the Complaint only alleges the AMS Entities are a RICO enterprise in conclusory fashion; (2) Plaintiff fails to plausibly allege that the AMS Entities formed an enterprise whose purpose was anything other than to commit the alleged predicate acts; and (3) that Plaintiff has not alleged that the AMS Entities engaged in conduct other than legitimate business activities.

"To establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise'[3] that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 161 (2001). "[T]he need for two distinct entities is satisfied . . . when a corporate employee unlawfully conducts the affairs of the corporation of which he is the sole owner — whether he conducts those affairs within the scope, or beyond the scope, of corporate authority." *Id.* at 166. The Individual Defendants, natural persons, are legally distinct from the AMS Entities, with different rights and responsibilities due to their different legal status. The Supreme Court found nothing in RICO that requires more "separateness" than that.

---

[3] The term enterprise "include[s] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

The definitive factor in determining the existence of a RICO enterprise is the existence of an association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes, that is, the pattern of racketeering activity requisite to the RICO violation. *United States v. Goldin Indus., Inc.,* 219 F.3d 1271, 1275 (11th Cir. 2000).  When a legal entity is the enterprise under consideration, there is little difficulty in proving the existence of the enterprise.  Proof that the entity in question has a legal existence satisfies the enterprise element. *See, e.g., Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.,* 46 F.3d 258, 268 (3d Cir. 1995) ("A corporation is an entity legally distinct from its officers or employees, which satisfies the 'enterprise' definition"); *United States v. Kirk,* 844 F.2d 660, 664 (9th Cir. 1988) (stating "the existence of a corporation fulfills the requirements of an ascertainable structure apart from the predicate racketeering activity").

The Court finds Plaintiff's Complaint adequately alleges the existence of an enterprise of two distinct entities, the Individual Defendants and the companies through which the Individual Defendants procured worker's compensation insurance. Compl. ¶ 279.  Therefore, the Court rejects Individual Defendants' argument that Plaintiff has failed to properly allege the existence of an enterprise.

Pattern of Racketeering Activity: Mail and Wire Fraud

In order to establish a RICO violation in this case, Plaintiff must prove the existence of a "pattern of racketeering activity" through "predicate acts" which consist of intentional participation in a scheme to defraud another of money or property through use of the mails or electronic forms of communication.  *Beck v. Prupis*, 162 F.3d 1090, 1095 (11th Cir. 1998).[4]  "To demonstrate a violation of the mail or wire fraud statutes, Plaintiff[] must show that [a defendant] had a conscious, knowing intent to defraud and that a reasonably prudent person would have been deceived by its misrepresentations."  *Green Leaf Nursery v. E.I. DuPont De Nemours and Co.*, 341 F.3d 1292, 1306 (11th Cir. 2003).

"[C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."  18 U.S.C. § 3575(e).  By statute, the "pattern" element requires a plaintiff to show at least two predicate acts of "racketeering activity."  18 U.S.C. § 1961(1)(B), (5).  Although showing two predicate acts is the only statutory requirement, case law establishes that this is not sufficient to prove a "pattern" - the

---

[4]  "Mail and wire fraud are analytically identical save for the method of execution," *U.S. v. Bradley,* 644 F.3d 1213, 1238-39 (11th Cir. 2011), and occur "when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme." *American Dental Ass'n. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Pellitier v. Zweifel*, 921 F .2d 1465, 1498 (11th Cir. 1991)).

plaintiff also must demonstrate that the "predicates are related,[5] and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989) ("*H.J. Inc.*").

The Supreme Court in *H.J. Inc.* also explained that showing a "pattern" does not necessarily require proof of multiple criminal "schemes." Finding that the "multiple-scheme" prerequisite "brings a rigidity to the available methods of proving a pattern that simply is not present in the idea of 'continuity' itself . . ." *Id.* at 2901-02. The Court emphasized instead the temporal focus of the "continuity" requirement. Thus, one scheme that extends over a substantial period of time, or that shows signs of extending indefinitely into the future, can establish a pattern. *Id.*

The Supreme Court described continuity as "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241. "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1265 (11th Cir. 2004). In contrast, open-ended continuity "rel[ies] on alleging the threat of continuity." *Id.* Under an open-ended continuity theory, a plaintiff meets its burden

---

[5] Individual Defendants do not dispute that the predicate acts of alleged mail and wire fraud in this case are related, and the acts satisfy the relatedness requirement.

"by establishing either that the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future, or that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Id.*  Plaintiff maintains that it has sufficiently alleged both open and closed-ended continuity because the alleged insurance fraud occurred for a substantial period of time (2005 through 2010), and the scheme posed a threat of continued criminal activity in the future by Defendants' continued acquisition of worker's compensation insurance and its attempt to conceal its true business purpose by continually shifting operations from one entity to another.  DE 142 at 6.

Finally, to survive a motion to dismiss, RICO claims based solely on fraud-related predicate acts, such as mail and wire fraud, must be plead with particularity.  To plead fraud with particularity, as stated above, a civil RICO plaintiff must allege, as to each defendant: (1) the precise statements, documents or misrepresentations made; (2) the time, place and person responsible for the statements; (3) the content and manner in which these statements misled the plaintiffs, and (4) what the defendants gained by the alleged fraud.  Fed. R. Civ. P. 9(b); *American Dental,* 605 F.3d at 1291; *see generally Brooks v. Blue Shield of Florida, Inc.*, 116 F.3d 1364 (11th Cir. 1997).  Additionally, plaintiffs must allege facts regarding defendants' intent or knowledge.  *Langford v. Rite Aid of Alabama, Inc.*, 231 F.3d 1308, 1312 (11th Cir. 2000).  These allegations need only "give rise to a strong inference that the defendants possessed the requisite fraudulent intent."

*Beck v. Mfrs. Hanover Trust Co.*, 820 F.2d 46, 49-50 (2d Cir. 1987), *overruled on other grounds by United States v. Indelicato,* 865 F.2d 1370 (2d Cir. 1989); *see also Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 949 (11th Cir. 1997). Where multiple defendants are involved, the complaint must not lump together all defendants, but rather must inform each defendant of the nature of his or her alleged participation in the fraud. *Ambrosia Coal & Construction Co. v. Pages Morales,* 482 F.3d 1309, 1317 (11th Cir. 2007).

### Open-ended

As discussed above, open-ended continuity refers to conduct that by its nature projects into the future with a threat of repetition. *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250 (11th Cir. 2004). A threat of continued activity may be established if related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit, or if the predicate acts are part of an ongoing entity's regular way of doing business. *H.J., Inc.*, 492 U.S. at 2902. The Supreme Court provided a helpful example of the requisite threat of long term activity required for finding open-ended continuity:

> Suppose a hoodlum were to sell "insurance" to a neighborhood's storekeepers to cover them against breakage of their windows, telling his victims he would be reappearing each month to collect the "premium" that would continue their "coverage." Though the number of related predicates involved may be small and they may occur close together in time, the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future, and thus supply the requisite threat of continuity.

*Id*.  Open-ended continuity can be found in the example above because it can be inferred that the hoodlum's racketeering activity was unlawful and was his regular way of doing business, and also because the nature of the predicate acts themselves implied a threat of continued criminal activity.  Here, although Individual Defendants' enterprise appears to be engaged in a legitimate business, the nature of the predicate acts alleged (illegal procurement of insurance), as in the example above, implies a threat of continued criminal activity.  *See id*. at 2902; *GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 466 (2d Cir.1995).  In *United States v. Alexander*,  888 F.2d 777 (11th Cir. 1989), *cert. denied*, 496 U.S. 927 (1990), the Eleventh Circuit, on remand from the Supreme Court, reconsidered the RICO pattern issue in light of *H.J. Inc*.  It found open-ended continuity because the predicate acts were intended to enrich the defendant school board member, were carried out in similar manner, and if the defendant had continued as school board member, he would have continued the criminal activities.  *Id*. at 778.

Individual Defendants argue Plaintiff has not made factual allegations which plausibly allege long term activity.  *Jackson*, 372 F.3d at 1265 ("The continuity element of a pattern of racketeering activity is crucial to a valid RICO claim in order to ensure that the crime alleged is the sort of offense that RICO is designed to address — one that is part of a pattern of ongoing, continuing criminality or that involves criminality that promises to continue into the future.")  "'It is this factor of *continuity plus relationship* which combines to produce a pattern.' S.Rep. No.

91–617, p. 158 (1969) (emphasis added).... Significantly, in defining 'pattern' in a later provision of the same bill, Congress was more enlightening: '[C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' 18 U.S.C. § 3575(e)." *Sedima*, 473 U.S. at 497 n.14.

In this case, Plaintiff alleges the Individual Defendants engaged in one on-going repetitive scheme to defraud it by misrepresenting and concealing essential information on the insurance applications submitted by them.  This was allegedly done to avoid proper computation of premiums in order to pay less workers' compensation insurance premiums and taxes than were actually due.  It is also alleged that the Individual Defendants sought to use Plaintiff's policies for other uninsured entities, and to avoid liability for workers' compensation claims.  Compl. ¶¶ 530-532.  This scheme allegedly began in 2005 and continued until discovered in 2010.  Compl. ¶ 334.  Each fraudulent insurance application had the same purpose, results, participants and victim.  There is no ascertainable ending point for this scheme.  Indeed, Plaintiff alleges that "the enterprise is continuing through the Defendants' conduct and participation in, and/or management and operation of, Dynamic Payroll Solutions. . ."  Compl. ¶ 599.  The Court concludes that Plaintiff has pled open-ended continuity because the alleged conduct threatened repetition.  It is plausible that further applications were envisoned.  Having found a "pattern of

racketeering activity" adequately plead through "predicate acts" which consist of intentional participation in an open-ended scheme to defraud Plaintiff of money through use of the mails or electronic forms of communication, there is no need to engage in an analysis of whether the alleged scheme meets the qualifying parameters for closed-ended continuity.[6]

As to the specificity required by Rule 9(b), Plaintiff has alleged sufficient facts to show fraud.  In paragraphs 314-317, Plaintiff alleges many specific material and false misrepresentations and omissions made in the 2005 and 2007 applications submitted to Plaintiff, and in paragraphs 318-326 Plaintiff alleges intent to deceive or mislead by the Individual Defendants, the benefits gained from their improper and/or fraudulent conduct, and the specific harm and damages incurred by Plaintiff as a result.  The Court finds the Complaint makes enough specific allegations as to Sheahan's and Schwartz's conduct, that reference to them together, for instance, when alleging intent and how they benefitted, does not discount the sufficiency of the Complaint pursuant to Fed. R. Civ. P. 9(b).  *See also*, Compl. ¶¶ 330-339.

---

[6] It is alleged throughout the Complaint that much, if not all, of the necessary paperwork in applying for and procuring worker's compensation insurance was sent via mail, facsimile or email.  *See e.g.,* Compl. ¶¶ 135, 137.

Conspiracy[7]

Under 18 U.S.C. § 1962(d), it is also illegal for anyone to conspire to violate one of the substantive provisions of RICO, including § 1962(c).  To state a RICO conspiracy claim under Section 1962(d), a plaintiff must allege, in addition to the substantive elements of a RICO claim, that each defendant agreed to the overall object of the conspiracy or that each defendant agreed to commit two predicate acts.  *American Dental*, 605 F.3d at 1293; *United States v. Starrett*, 55 F.3d 1525 (11th Cir. 1995).  Although alleging an agreement to violate § 1962(a), (b) or (c) is essential to establishing a conspiracy claim under § 1962(d), proof of such a claim is often established by circumstantial evidence of a scheme or inferences from the conduct of the alleged participants.  *United States v. Kopituk*, 690 F.2d 1289, 1323 (11th Cir. 1982); *United States v. Lynch*, 287 Fed. Appx. 66 (11th Cir. 2008); *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935 (11th Cir. 1997).

In this case, Plaintiff has alleged an agreement between the Individual Defendants to commit recurring insurance fraud.  See Compl. ¶¶ 607, 615.  Plaintiff has also made detailed factual allegations beginning at paragraphs 355-396 illustrating how Defendants Sheahan and Schwartz interacted with each other as evidence of their conspiracy.  These allegations, read in their totality, clearly suggest that such an agreement was made. Plaintiff has made sufficient allegations to allege

---

[7] Rule 9(b)'s particularity requirement does not apply to RICO conspiracy claims.  *O'Malley v. O'Neill*, 887 F.2d 1557, 1560 (11th Cir. 1989).

a conspiracy. *See generally, State Farm Mut. Auto. Ins. Co. v. Kugler*, 11-80051, 2011 WL 4389915 (S.D. Fla. Sept. 21, 2011).

**Fraud in the Inducement Claims in Counts VIII-IX**

Sheahan alone moves to dismiss Count VIII which is labeled Fraud in the Inducement Against Defendants Schwartz, Sheahan, Abbate, CSMG and PMP for the 2007 Application and 2008/2009 Policy.  Sheahan and Schwartz together move to dismiss Count IX which is labeled Fraud in the Inducement Against all Defendants for the 2009 Application and 2009/2010 Policy.

The elements of a cause of action for fraud in the inducement are as follows: (1) a false statement concerning a material fact, (2) knowledge by the person making the statement that the representation is false, (3) intent by the person making the statement that the representation will induce another to act upon it, and (4) consequent injury by the party acting in reliance on the representation.  *Butler v. Yusem*, 44 So.3d 102, 105 (Fla. 2010); *see also, Mettler, Inc. v. Ellen Tracy, Inc.*, 648 So.2d 253, 255 (Fla. Dist. Ct. App. 1994).

With respect to Count VIII, Sheahan argues Plaintiff fails to allege what information Sheahan independently knowingly provided in the 2007 application which was false with the intent to induce Plaintiff's reliance.  DE 175 at 9.  Count VIII generally covers the elements of a cause of action for a claim for fraudulent inducement as listed above and lumps the Defendants together under the term "Defendants."  However, earlier in the Complaint (and incorporated in Count VIII),

paragraph 334(a) alleges, in pertinent part, that Sheahan provided and/or assisted in providing false and/or misleading information in the 2007 application.  Moving to paragraph 314, the Complaint lists ten specific material misrepresentations or omissions in the 2007 application.  Finally, in paragraph 326 and other paragraphs, Plaintiff alleges how it relied and was harmed by these misrepresentations or omissions.  While recognizing that the instant Complaint is very long, complex and must be carefully cross-referenced, the Court finds that the allegations in the Complaint taken as a whole, adequately allege that Sheahan fraudulent induced Plaintiff to issue the 2008/2009 policy.

With respect to Count IX, Individual Defendants correctly point out that Plaintiff wholly ignores their argument regarding the 2009 application being made to "Federal Insurance Company," and not to Plaintiff.  The 2009 application, on its face, so indicates.  *See* Compl. Ex. 7.   "Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control."  *Gross v. White*, 340 F. App'x 527, 533 (11th Cir. 2009) quoting *Tucker v. National Linen Service Corp.*, 200 F.2d 858, 864 (5th Cir. 1953).  Clearly Plaintiff cannot sue on a contract to which it was not a party.  *Barroso v. Respiratory Care Servs., Inc.*, 518 So. 2d 373, 377 (Fla. Dist. Ct. App. 1987) (fraudulent inducement claim failed because alleged misrepresentations not directed to Plaintiff).  Furthermore, Count IX is pled against all defendants, and lacks the specificity required by Rule 9(b).  The motion to dismiss will be granted as to Count IX as to all defendants without prejudice, and with leave

to amend if Plaintiff, in good faith, may do so.

**Unjust Enrichment**

A claim for unjust enrichment has three elements: (1) the plaintiff has

conferred a benefit on the defendant; (2) the defendant voluntarily accepted and

retained that benefit; and (3) the circumstances are such that it would be inequitable

for the defendant to retain the benefit without paying for its value.  *Aceto Corp. v.*

*TherapeuticsMD, Inc.*, 953 F. Supp. 2d 1269, 1287 (S.D. Fla. 2013) (Marra, J.) citing

*Fla. Power Corp. v. City of Winter Park*, 887 So.2d 1237, 1241 n.4 (Fla. 2004)*; Sierra*

*Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1229 (S.D.

Fla. 2009) (Marra, J.) citing *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank*

*of Fla.*, 667 So.2d 876, 879 (Fla. Dist. Ct. App. 1996); *Tooltrend, Inc. v. CMT Utensil,*

*SRL*, 198 F.3d 802, 805 (11th Cir. 1999).  Individual Defendants contend the unjust

enrichment claim in Count XIV should be dismissed because Plaintiff fails to allege

that they benefitted from the AMS Entities allegedly not paying the total premium

due for the 2008/2009 and 2009/2010 policies, or by workers' compensation benefits

allegedly paid for claimants who were allegedly not listed as employees of the AMS

Entities.

Unjust enrichment does not require the same specificity as a fraud claim.

While the statement, "[t]he Individual Defendants have also personally benefitted

from the insurance coverage," is conclusory (Compl. ¶ 642), having reviewed over 600

paragraphs relative to the insurance fraud schemes alleged, it is clear Plaintiff has

asserted a right to relief above the speculative level and stated its claim with

sufficient specificity to allow the Individual Defendants to answer.

While the theory of unjust enrichment is equitable in nature and is, therefore,

not available where there is an adequate legal remedy, a plaintiff may maintain an

unjust enrichment claim in the alternative to its legal claims. *Court-Appointed*

*Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.*, 2008 WL 906101, *5 (S.D. Fla.

2008) (Marra, J.); *Aceto Corp.*, 953 F. Supp. 2d at 1287. To the extent Individual

Defendants challenge this count because Plaintiff alleges the existence of an express

contract for which it also seeks to hold the Individual Defendants liable, it is not upon

the allegation of the existence of a contract, but upon a showing that an express

contract exists that the unjust enrichment count fails. Thus, while Plaintiff may not

recover under both legal and equitable theories, there is no basis for dispensing with

Plaintiff's unjust enrichment claim at the motion to dismiss stage. *Aceto Corp*, 953 F.

Supp. 2d at 1289.

<u>Conclusion</u>

Based upon the conclusions made herein, it is hereby

ORDERED AND ADJUDGED that the Motion of Defendants Walter Sheahan, Jr. &

Robert Schwartz to Dismiss Plaintiff's Third Amended Complaint for Failure to State a

Cause of Action [DE 96] is granted in part and denied in part. It is denied in all

respects except for Count IX which is dismissed as to all defendants with leave to amend.

DONE AND ORDERED in Chambers at West Palm Beach, Palm Beach County, Florida, this 25th day of March, 2014.

KENNETH A. MARRA
United States District Judge